**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>R.B.H. et al.</u>

v.                                        Civil No. 09-cv-398-JD

<u>John P. Cyr et al.</u>[1]

### REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by plaintiff R.B.H.
("Randall").  Randall is incarcerated in Maine and is appearing
pro se and in forma pauperis here.  He has named his three minor
children as additional plaintiffs in this action and has
purported to represent them.  The Complaint, consisting of the
original complaint (doc. no. 1), the Amended Complaint (doc. no.

---

[1]In addition to John P. Cyr, plaintiff has named Bruce A.
Cardello; Susan B. Carbon; Timothy Vaghan; Thomas Rappa, Jr.;
Donald Goodnow; David Brock; John Broderick; Joseph Nadeau; Linda
Dalianis; New Hampshire Supreme Court Justice John Duggan; New
Hampshire Supreme Court Justice Richard Galway; Jeanne Shaheen;
Craig Benson; John Lynch; Phillip McLaughlin; Peter Heed; Michael
Delaney; Raymond Flynn; Paul Hunt; Daniel Itse; Ronald Guida;
Paul F. Cavanaugh; Concord Police Department; City of Concord;
United States of America; William Morse; Thomas Colantuano; John
Kacavas; John Ashcroft; Alberto Gonzales; John "Jay" Fallon;
Glenn Fine; Janet Napolitano; Wendy Hofland; Richard Bennett;
Patricia Bennett (deceased); Lael Smith; Deborah Reynolds;
Michael Conklin; Conklin & Reynolds, P.A.; John Cameron; Joseph
Coutu; Frances Coutu; and Raymond Coutu; along with other unnamed
individuals, as defendants to this action.  All of the defendants
are alleged to be liable in their individual capacities.

14), and the First Supplemental Amendment attached thereto, is before me for preliminary review to determine, among other things, whether it invokes the subject matter jurisdiction of this Court and states any claim upon which relief can be granted. See United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

Also pending are Randall's motion to extend time to file a supporting memorandum (doc. no. 2) and his request for the appointment of an attorney set forth in the Complaint.  If this Report and Recommendation is accepted, the pending motion and request for counsel will be moot.  Therefore, in an Order this date, I have denied the motion and request without prejudice to renewal if the Report and Recommendation is not accepted.

Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartly pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97,

106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997); <u>see also</u> <u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, <u>Erickson</u>, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but

the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  <u>Id.</u> (citation omitted).  Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> at 1950 (citation omitted).

<u>Background</u>

I.   <u>Divorce</u>

The claims in this case arise out of legal proceedings in New Hampshire, including a contentious divorce.  Randall and his former wife, Wendy, are parents of three sons.  During their marriage, Wendy concealed income and assets, gave money to her parents without telling Randall, and delayed acquiring certain property in Lincoln, Massachusetts, that a religious organization in Massachusetts would have given to both Wendy and Randall. Wendy's father, Richard Bennett, attacked Randall in 1998.

In 2000, Wendy and Randall bought property in Plymouth, New Hampshire, in Wendy's name.  At that time, Wendy was planning to end their marriage.

Randall became ill in March 2001.  Blood tests thereafter revealed severe liver toxicity.  When tests were repeated a month

later, the liver toxicity had largely resolved.  Randall
suspected that the toxicity was caused by Wendy and her family
trying to poison him with adulterated food and coffee, beginning
in December 2000.  Randall was recovering in May 2001 when Wendy
announced that she was planning to divorce him.

Wendy filed for divorce sometime between May 2001 and August
10, 2001, claiming that she had suffered a long pattern of verbal
abuse in their marriage.  Wendy's father again tried to attack
Randall in 2001 after Wendy filed her divorce papers.

On August 10, 2001, Wendy filed a domestic violence
complaint against Randall under N.H. Rev. Stat. Ann. ("RSA")
§ 173-B.  Wendy's lawyer, Deborah Reynolds, assisted by Michael
Conklin of Conklin & Reynolds, P.A., contended that Randall was
psychologically unstable and that he had subjected Wendy to
verbal abuse.  Randall represented himself during the
proceedings.  Wendy testified during the divorce proceedings that
she had struck Randall and denied that he had hit her.  In
response to Wendy's allegations of domestic violence, Judge Susan
Carbon issued orders that limited Randall's contact with Wendy
and his children and forced him to leave the Plymouth property.

Randall claimed during the divorce proceedings that the

children were not safe with Wendy and her family, in part because
they did not install the children's car seats properly, that
Wendy's mother had been abusive to at least one child, and that
Wendy had over-medicated one son with cold medicine.  Sometime
prior to the conclusion of the divorce proceedings, Wendy
testified that her mother, Patricia Bennett, had in the past
abused one of their children, but had stopped.  John Cameron, an
attorney, was appointed to be the guardian ad litem for the
children.  Cameron testified that the children had not been
abused, and that Randall's reports of child abuse were not true.
Cameron included those findings in his written report to the
court.

In 2002, Wendy filed for bankruptcy.  In her bankruptcy
petition, Wendy did not disclose the pending divorce, failed to
list thousands of dollars of her own assets, and listed some of
Randall's business assets as Wendy's.

Three state court Family Division judges were assigned to
the divorce proceedings, beginning with Judge Carbon in August
2001.  Randall claimed during the proceedings that Judge Carbon
had engaged in misconduct and unethical behavior.  Judge Carbon
recused herself thereafter.  Judge Carbon was involved, however,

in selecting Judge Cyr to be the next judge assigned to the case in 2002.

A conflict developed between Randall and Judge Cyr when Judge Cyr did not hold a hearing in June 2002 at Randall's request, pursuant to RSA § 458:16-b, concerning the disposition of property owned by a third party in Lincoln, Massachusetts, where Randall stored tools and equipment that he needed for work. Wendy and her father had locked Randall out of the garage and falsely accused him of cutting the locks.

The court ordered Randall to serve the third party owner with notice of the hearing, scheduled for August 14, 2002. Randall complied with this order.  During the hearing, Randall accused Judge Cyr of engaging in criminal conduct and violating Randall's rights by, among other things, failing to hold a timely hearing in June 2002 relating to the garage.  Randall and Judge Cyr engaged in five to ten minutes of argument on these issues, until Judge Cyr threatened to impose sanctions on Randall and also threatened to have him arrested.

After the hearing, Randall met with Assistant United States Attorney William Morse to find out whether Randall could arrest Judge Cyr personally for his conduct.  Morse was noncommittal.

Randall opted to file a motion to recuse Judge Cyr instead.

On September 11, 2002, in a hearing in the divorce proceeding, Judge Cyr flew into a rage, accused Randall of threatening him, and agreed to recuse himself from the case. Judge Cardello was assigned to replace Judge Cyr.

Judge Cardello presided over an evidentiary hearing in the divorce proceeding on February 4, 2003.  Randall had requested that Judge Carbon's orders be reconsidered by Judge Cardello.  In addition, Randall wanted to impugn Cameron's testimony and written reports discrediting Randall's accusations of child abuse.  Randall had intended to call Joseph Coutu as a witness that morning.  Randall expected Coutu to testify that Judge Carbon had engaged in misconduct in Coutu's divorce proceedings. Randall also expected Coutu to testify that he had been represented by Cameron in his divorce proceeding, and that he knew Cameron to be biased against Randall.  Coutu did not appear to testify and refused to speak with Randall thereafter.

Cameron was scheduled to testify later in the day on February 4, 2003, in his capacity as the guardian ad litem, in Randall's divorce proceeding.  On cross-examination, Randall asked Cameron why Coutu had not appeared to testify earlier, but

Cameron refused to respond.  Wendy's lawyer and Judge Cardello stopped Randall from pursuing this line of questioning.

Randall has obtained affidavits from Coutu's parents, Frances and Raymond Coutu, stating that Cameron told Coutu's parents that he would <u>not</u> file a motion to have Judge Carbon removed from Coutu's case because Cameron thought it would be bad for his own career.  Cameron apparently changed his views, as he in fact filed such a recusal motion in Coutu's case sometime before he took the stand in Randall's case on February 4, 2003. Judge Cardello and Randall both saw Cameron file this motion to recuse, but Randall did not know what Cameron was filing at the time.  While preparing his appeals in his divorce proceeding in 2006, Randall discovered that Cameron's February 4, 2003 filing in the Coutu case was a motion to recuse Judge Carbon.

Randall has since surmised that Cameron "bribed" Coutu not to appear as a witness in Randall's divorce proceeding, presumably promising to seek Judge Carbon's recusal in exchange for Coutu's not appearing to testify about Cameron and Judge Carbon.  Randall concluded that Judge Cardello knew about this agreement between Cameron and Coutu, based on the judge's awareness of certain documents filed in Randall's divorce in

2002, which detail the substance of Coutu's expected testimony.

During the final hearings in January and February 2003 in Randall's divorce proceeding, Judge Cardello led Randall to believe that certain personal property in the Plymouth residence, consisting of tools, equipment, and building supplies, would remain Randall's.  On April 17, 2003, before the divorce decree became final, Randall went to the Plymouth property with a utility trailer to recover these items, accompanied by a Plymouth Police officer.  Wendy's attorney filed an ex parte motion, objecting to Randall's taking these items.  Judge Cardello granted the motion, reversing his earlier position regarding Randall's ownership of the property.

Judge Cardello issued the final divorce decree in Randall's case on April 18, 2003.  The decree finalized orders granting certain property to Wendy, including the Plymouth home, and granting Wendy custody of the children.

Randall filed a notice of discretionary appeal of the divorce decree in the New Hampshire Supreme Court ("NHSC").  The NHSC declined to accept it.  Randall pursued further litigation to try to modify the child custody order and the property settlements.  His appeals of these matters were unsuccessful.

The United States Supreme Court denied Randall's petition for certiorari as to these cases and subsequently denied Randall's motion for reconsideration on January 14, 2008.  Randall recently filed a motion to vacate the NHSC's decision declining to accept an appeal of the divorce decree, asserting fraud.

Randall filed Judicial Conduct Committee complaints against Judges Carbon and Cyr.  Randall also contacted a number of federal officials about these judges' conduct, including FBI agent John "Jay" Fallon, several Attorneys General of the United States, and Justice Department Inspector General Glenn Fine.

II.  Concord Parking Violation

In October 2002, Randall received a ticket for parking longer than thirty minutes on a downtown street in Concord, New Hampshire, between the hours of 2:00 a.m. and 6:00 a.m.  Randall contested the ticket and was found guilty.  Randall filed an appeal in the NHSC, raising a number of state and federal constitutional claims.  The NHSC affirmed his conviction. Randall believes that the NHSC opinion includes lies and omissions.

III. <u>New Hampshire State Police and Watch List</u>

At various times since 2003, New Hampshire State Police officials, including Police Detective Paul Hunt, have sought to entice Randall to enter New Hampshire.  The Complaint does not elaborate on how Randall was contacted.  Other unnamed officials have told Randall that the efforts to entice him to New Hampshire were a ruse, and that meeting with Hunt would be bad for Randall's health and safety.

In August 2006, Randall was traveling with his mother and children, taking the children to the San Diego International Airport.  Randall set off a security alert and was forced to undergo a special security screening in a private room.

On October 28, 2008, a Searsport, Maine, police officer, executed an affidavit in support of a search warrant of a vehicle registered to Randall in Maine.  According to the affidavit, a member of the Maine State Police Tactical Team has said that Randall is on a "Watch List" with authorities in New Hampshire for sending a threatening letter to a New Hampshire judge. Randall acquired this affidavit in January 2009 through discovery in a criminal case pending against him in Waldo County, Maine.

According to Randall, the only possible source of the

12

accusation that he sent a threatening letter to a judge is Judge

Cyr.  Randall believes that Judge Cyr falsely accused him of this

in 2002 and has kept the deceit going with the complicity of

other federal and state authorities, including William Morse.

IV.  <u>Claims</u>[2]

Randall has cited 42 U.S.C. § 1983, the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), and state law in

articulating the following claims[3]:

> 1.    Defendants, including the City of Concord, Concord
> District Court Judge Michael Sullivan, the prosecutor at
> Randall's parking violation trial, and the Justices of the
> New Hampshire Supreme Court, acting alone and in a
> conspiracy with one another, engaged in RICO violations and
> violations of Randall's federal constitutional rights, with
> respect to the parking violation conviction.
>
> 2.    RSA § 173-B (regarding domestic violence) and RSA § 458
> (regarding divorce proceedings), interfere with free speech
> rights and, as enforced, violated Randall's due process and
> equal protection rights under the United States
> Constitution.

---

[2]The claims, as identified herein, will be considered to be
the claims raised in the complaint for all purposes.  If Randall
objects to the claims as identified, he must do so by properly
filing an objection to this Report and Recommendation or by
properly moving to amend his complaint.

[3]I construe Randall's claims against federal agents as
arising under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403
U.S. 388 (1971), which provides a cause of action under certain
circumstances where federal officials are alleged to have
violated a plaintiff's constitutional rights.

3.    Defendants, including Wendy, the Bennetts, Lael Smith,
Wendy's lawyers, the Coutus, state court judges, and State
Judicial Branch personnel, acting individually and in
conspiracy with each other, engaged in RICO violations and
violated Randall's constitutional rights in connection with
Randall's divorce, domestic violence, and child custody
proceedings.

4.    Defendants, including state and federal law enforcement
officials, New Hampshire state judges, and New Hampshire
judicial branch staff, engaged in RICO violations and
violated Randall's constitutional rights, with respect to
Randall's placement on the Watch List, in a conspiracy that
began when Judge Cyr accused Randall of threatening him in
2002, and continued through the action and inaction of
federal and state authorities.

5.    In 2001 and 2002, DHHS concealed and conspired to
conceal evidence that Randall's children had been abused,
ignored Randall's complaints that the children had been
abused, and falsely accused Randall of lying about child
abuse, in violation of Randall's federal constitutional
rights to due process and equal protection.

6.    Defendants Wendy and her family are liable for the tort
of assault.

7.    Defendants engaged in criminal conduct.

Randall seeks damages and equitable relief, including:  (1)
an injunction against the State of New Hampshire barring it from
taking any actions or issuing any orders against Randall as a
consequence of the parking violation conviction, the divorce
decree, or the child custody decree; (2) rescission of Wendy's
real property transfers; (3) an order directed against state and
federal law enforcement agencies, compelling them to remove

14

Randall from the Watch List; and (4) a declaratory judgment that
Concord's enforcement of its parking ordinance constitutes an
unconstitutional municipal policy.

Discussion

I.   <u>Claims Asserted on Behalf of Randall's Children</u>

Parties to a federal lawsuit cannot be represented by anyone
other than themselves or a member of the bar.  <u>See</u> 28 U.S.C.
§ 1654; <u>see also</u> LR 83.2(d) ("Persons who are not members of the
bar . . . will be allowed to appear before this court only on
their own behalf."); LR 83.6(b) ("<u>Pro</u> <u>se</u> parties must appear
personally . . . .  A <u>pro</u> <u>se</u> party may not authorize another
person who is not a member of the bar of this court to appear on
his or her behalf").  All claims asserted by Randall on his
children's behalf should be dismissed from this action.

II.  <u>Rooker-Feldman Doctrine and Collateral Estoppel</u>

The <u>Rooker-Feldman</u> doctrine -- named for a line of cases
derived from <u>D.C. Ct. App. v. Feldman</u>, 460 U.S. 462 (1983) and
<u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413 (1923) -- "precludes
[federal district] courts from exercising subject matter
jurisdiction where the issues presented in the case are
'inextricably intertwined' with questions previously adjudicated

by a state court, such that the federal district court would be
. . . reviewing a state court decision for error."  Mills v.
Harmon Law Offices, P.C., 344 F.3d 42, 44 (1st Cir. 2003)
(footnote and citations omitted); see also Hill v. Town of
Conway, 193 F.3d 33, 39 (1st Cir. 1999).  The claims are
"inextricably intertwined" if "'the federal claim succeeds only
to the extent that the state court wrongly decided the issues
before it.'"  Hill, 193 F.3d at 39 (quoting Pennzoil Co. v.
Texaco, Inc., 481 U.S. 1, 23, 25 (1987) (Marshall, J.,
concurring)).

    The doctrine is applicable in "'cases brought by state-court
losers complaining of injuries caused by state-court judgments
rendered before the district court proceedings commenced and
inviting district court review and rejection of those
judgments.'"  Lance v. Dennis, 546 U.S. 459, 464 (2006) (citation
omitted).  Rooker-Feldman applies when the losing party in state
court files suit in federal court after the state proceedings
have ended.  See Federacion de Maestros v. Junta de Relaciones
del Trabajo, 410 F.3d 17, 21 (1st Cir. 2005) (citations omitted).
Once the state court proceedings have ended, a federal district
court lacks jurisdiction to review a state court decision even if

the judgment is patently wrong or was entered following patently unconstitutional proceedings.  See Feldman, 460 U.S. at 486.

A litigant may not seek to reverse a final state court judgment simply by recasting his complaint in the form of a civil rights action.  See Fortune v. Mulherrin, 533 F.2d 21, 22 (1st Cir. 1976); cf. Miller, 586 F.3d at 59 (Rooker-Feldman bars jurisdiction where parties who lost in state court seek review and rejection of state court judgment on legal grounds not actually litigated in state court).  The proper recourse for a litigant in the state courts who is unhappy with the decisions of those courts is to pursue his appeal through the state appellate process, and then to the United States Supreme Court.  See Miller, 586 F.3d at 59 ("Only the Supreme Court of the United States may invalidate state court civil judgments.").

The Rooker-Feldman doctrine is not co-extensive with claim or issue preclusion principles.  "[A] preclusive state court judgment is not sufficient to trigger the Rooker-Feldman doctrine"; a state trial court judgment may have preclusive effect as soon as it issues, even while it is pending on appeal.  Federacion, 410 F.3d at 27 n.13.  Federal courts look to state law to determine the preclusive effect of earlier state court

17

decisions.  <u>See</u> <u>Sutliffe v. Epping Sch. Dist.</u>, 584 F.3d 314, 326-27 (1st Cir. 2009).

    A.  <u>Parking Violation (Claim 1)</u>

In challenging the Concord parking violation conviction, Randall has asserted a number of subsidiary claims, grouped together here as Claim 1.  Randall has requested a declaratory judgment that the City of Concord's enforcement of its parking ordinance is a discriminatory policy that violates his right to equal protection under the Fourteenth Amendment.  In the state court proceedings, Randall raised this claim of an equal protection violation and did not prevail.[4]  <u>See</u> <u>State v. Hofland</u>, 151 N.H. 322, 326, 857 A.2d 1271, 1275 (2004).

Randall has also asserted in Claim 1 that his parking violation conviction was the product of bias, corruption, and a conspiracy in the state court system.  Randall has focused this attack on the NHSC opinion itself, which he contends is replete with lies and omissions, rendering it fraudulent.  Randall's prevailing here on his claims relating to the conduct of

---

    [4]Randall is collaterally estopped from asserting the same constitutional claim here.  <u>See</u> <u>Daigle v. City of Portsmouth</u>, 129 N.H. 561, 570, 534 A.3d 689, 693 (1987) ("collateral estoppel bars a party to a prior action . . . from relitigating any issue or fact actually litigated and determined in the prior action").

participants in the state court proceedings, including the prosecutor and the judges, would require this court to invalidate or reverse the state court judgments resulting in and upholding his conviction. This is precisely the course of action precluded by the Rooker-Feldman doctrine. See Lance, 546 U.S. at 464; Miller, 586 F.3d at 59. Accordingly, I recommend that Claim 1, relating to the parking violation, be dismissed in its entirety.

B. Divorce and Domestic Relations (Claims 2-3)

I. Claims Are Inextricably Intertwined

In his second and third claims enumerated above, Randall has contended that Wendy and her family were able to defraud him only with the encouragement and participation of attorneys and judges involved in the divorce and child custody proceedings. Randall has asked this court to render the child custody and property settlement decrees unenforceable in the courts in New Hampshire, to find the underlying state laws unconstitutional, and to pass judgment on the conduct of judges and other participants in the divorce and domestic abuse proceedings. Randall's claims against these defendants thus raise issues that are inextricably intertwined with the claims resolved in the state court proceedings.

### ii.  State Court Proceedings Have Ended

For the purposes of applying the Rooker-Feldman doctrine, a court will find that underlying state court proceedings have ended:  (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, rendering the judgment susceptible to certiorari review under 28 U.S.C. § 1257; (2) when the state proceeding results in an order, and neither party seeks further action, for example, by allowing the time for appeal to expire within the state court system, or by voluntarily dismissing the case; or (3) if the state proceeding has resolved all the federal questions in the litigation, and only state law or factual questions remain to be litigated.  See Federacion, 410 F.3d at 24-25.

Here, the first circumstance is applicable.  A declination of acceptance order represents a determination by the NHSC that further review in the state courts is not desirable.  See N.H. Sup. Ct. R. 3.  The NHSC thus rendered the divorce decree final for all purposes when it declined to accept Randall's discretionary appeal.  Although Randall has recently filed a motion to vacate that declination of acceptance, he has not alleged facts indicating that his divorce proceeding has been

reopened by the state courts, or that there are any issues left to be resolved there.  Randall's previous attempts to modify the child custody decree and property settlements ended unsuccessfully in the state courts when the NHSC affirmed the lower court decisions.  After these proceedings ended, the United States Supreme Court denied certiorari.  Randall filed this action in federal district court after all of these earlier proceedings had ended.

Accordingly, Rooker-Feldman applies here to bar this court's exercise of jurisdiction over Claims 2 and 3.  I recommend dismissal of Claims 2 and 3 on that basis.

III. Watch List (Claim 4)

"RICO . . . makes it criminal 'to conduct' an 'enterprise's affairs through a pattern of racketeering activity,' 18 U.S.C. § 1962(c), defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics and bearing specified penalties."  Rotella v. Wood, 528 U.S. 549, 552 (2000) (citing 18 U.S.C. § 1961(l)). "'Pattern' is also a defined term requiring 'at least two acts of racketeering activity . . . .'"  Rotella, 528 U.S. at 552 (citing 18 U.S.C. § 1961(5)).  Any person who is "injured in his business

or property" by a RICO violation may bring a civil action for treble damages and attorney fees.  18 U.S.C. § 1964(c).

Much of what Randall cites as injuries relating to the Watch List consists of adverse rulings occurring in the divorce proceedings that resulted in Wendy's ownership of certain property.  To the extent that Randall is attempting to challenge the validity of the orders issued in his divorce proceeding, he is barred by the Rooker-Feldman doctrine from doing so, for reasons set forth above.

Furthermore, civil RICO claims are subject to a four-year statute of limitations, which begins to run when the plaintiff knew or should have known that he suffered an injury.  See Lares Group, II v. Tobin, 221 F.3d 41, 43-44 (1st Cir. 2000).  The statute of limitations is not keyed to when the plaintiff becomes aware of a pattern of RICO activity.  Id.  Randall's RICO claims relating to injuries occurring prior to 2005 are time-barred.

Randall asserts that police and private parties in Maine stole his personal and business property in November 2008. Although Randall has made conclusory allegations about the existence of a conspiracy between those actors in Maine and the defendants here relating to the Watch List, Randall has alleged

no facts that connect any defendant in this case to cognizable injuries Randall may have suffered in Maine.

Therefore, Randall has failed in Claim 4 to state a claim upon which relief can be granted.  Claim 4 should be dismissed.

IV.    Statute of Limitations (Claims 5-6)

     A.   DHHS Child Abuse Allegations (Claim 5)

In Claim 5, Randall has asserted that unspecified DHHS officials are liable, pursuant to 42 U.S.C. § 1983, for violating his rights to due process and equal protection under the United States Constitution by engaging in the following conduct in 2001 and 2002:  concealing and conspiring to conceal evidence that Randall's children had been abused, ignoring Randall's complaints that his children had been abused, and falsely accusing Randall of lying about child abuse.  Section 1983 provides a cause of action for persons claiming that their federal statutory or constitutional rights have been violated by state actors.[5]  See

---

[5]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

23

<u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The same amendment prohibits states from denying persons in their jurisdiction the equal protection of the laws.  <u>See</u> <u>id.</u>

The statute of limitations for claims of constitutional violations arising in New Hampshire and filed under 42 U.S.C. § 1983 is three years, pursuant to RSA § 508:4, the general statute of limitations for personal injury actions in New Hampshire, which must be applied in section 1983 actions arising in the state.  <u>See</u> <u>Gilbert v. City of Cambridge</u>, 932 F.2d 51, 57 (1st Cir. 1991) (limitation period applicable to section 1983 claim is found in general personal injury statute of jurisdiction in which claim arises).  The statute of limitations on a section 1983 claim begins to run when the plaintiff knew or should have known of his injury.  <u>See</u> <u>id.</u>

Here, Randall has alleged that DHHS mishandled his child abuse complaints filed in 2001 and 2002.  Randall has further asserted that he lost custody over his children in the divorce,

_____

party injured in an action at law . . . .

and that Cameron, the guardian ad litem, testified that Randall's charges of child abuse were not credible and that the children had not been abused.  The Complaint in this case was filed in November 2009, more than three years after Randall knew or should have known about those events that occurred prior to April 2003. Accordingly, Randall's claim of constitutional violations perpetrated by DHHS officials is time-barred and should be dismissed.

     B.   <u>Assault (Claim 6)</u>

Randall has asserted that Wendy's father assaulted him or attempted to assault him in 1998 and 2001, and that Wendy hit him prior to April 2003.  Additionally, in December 2000 through March 2001, Randall began saving samples of food and drinks that he suspected had been poisoned by Wendy's mother or someone else preparing food at Wendy's parents' house.  Blood tests revealed that Randall suffered from liver toxicity in March 2001.  Thus, Randall knew or should have known that he suffered the injuries alleged to have been caused by Richard Bennett in 1998 and 2001, by Patricia Bennett or someone else preparing food for him prior to 2002, and by Wendy when she hit him sometime prior to April 2003.  Claim 6, asserting assault based on these events, is

therefore time-barred and should be dismissed on that basis.  <u>See</u> RSA § 508:4.

V.   <u>Crimes (Claim 7)</u>

Randall asserts in his Complaint that a variety of state and federal defendants, engaged in criminal conduct including, among others, Judge Cyr and the NHSC Justices.  As a private citizen, Randall lacks standing to prosecute crimes.  <u>See</u> <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989).  Accordingly, Claim 7 should be dismissed.

VI.  <u>Individual Defendants</u>

In addition to the above-stated grounds for dismissing all of the claims asserted in this action, claims against specific defendants should be dismissed, as follows:

A.   <u>State Agencies</u>

Randall has apparently intended to name certain state agencies, including DHHS, as defendants.  Claims for damages and injunctive relief cannot be maintained in federal court against unconsenting states and their agencies, absent Congressional abrogation of the State's sovereign immunity.  <u>See</u> <u>Fantini v.</u>

Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009); see also P.R.
Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146
(1993).  Neither a waiver of sovereign immunity nor any
Congressional abrogation of that immunity exists as to the claims
asserted here.  New Hampshire has not waived its immunity, and
Congress did not abrogate the State's Eleventh Amendment immunity
through section 1983, see Will v. Mich. Dep't of State Police,
491 U.S. 58, 67 (1989).  Accordingly, the claims asserted against
state agencies in this action should be dismissed.

     B.   Judges and Guardian Ad Litem

     The doctrine of judicial immunity protects judges from
"civil liability for any normal and routine judicial act," except
those taken in the "clear absence of all jurisdiction."  Cok, 876
F.2d at 2 (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)).
"This immunity applies no matter how erroneous the act may have
been, how injurious its consequences, how informal the
proceeding, or how malicious the motive."  Cok, 876 F.2d at 2.
Such immunity can defeat a claim that the official act of the
defendant was the product of a corrupt conspiracy.  See id. at 3;
see also Dennis v. Sparks, 449 U.S. 24, 27-29 (1980).

     Here, Randall has challenged as fraudulent, improper, and

illegal Judge Cardello's decrees and rulings from the Bench during hearings, Judge Carbon's orders, and Judge Cyr's orders and pronouncements designed to control the conduct of witnesses and parties, including his threat that he would sanction Randall or order his arrest.  Randall has similarly alleged that his parking violation conviction was the result of a biased judge, and that his appeals before the NHSC were denied in a fraudulent manner.  These rulings and pronouncements were all taken within the jurisdiction of each presiding judge or justice, for the purpose of resolving issues or controlling the conduct of proceedings in court.  Judges are absolutely immune from claims for damages or injunctive relief arising from such judicial acts. Accordingly, the claims against Concord District Court Judge Michael Sullivan, Judge Carbon, Judge Cardello, and NHSC Justices John Broderick, Joseph Nadeau, Linda Dalianis, James Duggan, and Richard E. Galway should be dismissed in their entirety, along with all claims against Judge Cyr arising from his orders and pronouncements from the Bench issued in connection with the divorce proceedings.

By the same token, John Cameron, serving as court-appointed guardian ad litem, is absolutely immune from claims asserted

against him based on his role as court-appointed guardian ad litem.  See Cok, 876 F.2d at 3 (court-appointed guardian ad litem is entitled to absolute quasi-judicial immunity for claims arising from conduct that was integrally related to judicial process, including testifying and filing reports).  Claims pending against Cameron relating to his testimony, investigations, and reports filed as a guardian ad litem should, therefore, be dismissed.

    C.   Supervisors

Randall has asserted that the following persons are liable in their capacity as supervisors during the relevant time frame: Jeanne Shaheen, Craig Benson, Governor John Lynch, Phillip McLaughlin, Peter Heed, Michael Delaney, Raymond Flynn, Thomas Colantuano, John Kacavas, John Ashcroft, Alberto Gonzales, Glenn Fine, and Janet Napolitano.

Supervisors may be held liable under section 1983 and Bivens only for their own acts.  See Ashcroft, ___ U.S. at ___, 129 S. Ct. at 1949 (there is no supervisory liability in such actions based on respondeat superior).  In such actions, "where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious

liability, each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct."

Id.

The First Circuit, following Ashcroft, held that:

> [S]upervisory liability lies only where an
> affirmative link between the behavior of a
> subordinate and the action or inaction of his
> supervisor exists such that the supervisor's
> conduct led inexorably to the constitutional
> violation.  Further, supervisory liability under a
> theory of deliberate indifference will be found
> only if it would be manifest to any reasonable
> official that his conduct was very likely to
> violate an individual's constitutional rights.

Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009)

(internal quotations and citations omitted).  A supervisor is not

deliberately indifferent, for purposes of § 1983 liability, if he

or she is alleged merely to have been present for, or otherwise

obtains knowledge of, the wrongdoing of a subordinate, or if the

supervisor promulgated a policy that does not, on its face,

direct or condone the wrongful conduct of subordinates.  Id.

Here, Randall has not alleged facts sufficient to state a

claim against these supervisors for their own acts.  I recommend

that the claims against these individuals be dismissed.

D.  Miscellaneous Officials

Former NHSC Chief Justice David Brock, Paul Cavanaugh, and

Timothy Vaghan are listed in the caption as defendants, but no allegation in the Complaint refers to them.   Only indirect, passing references are made in the complaint to state legislators Daniel Itse and Ronald Guida.   State Police Detective Paul Hunt's liability is asserted based solely on his attempting to lure Randall to New Hampshire, which cannot, as alleged, be construed as a federal cause of action.

In the Complaint, Randall asserts that unspecified judicial branch officials including Donald Goodnow defrauded him, obstructed justice, and participated in the Watch List conspiracy by "seizing" prepayments for transcripts of the divorce proceedings.   These allegations, including the conclusory allegations of a conspiracy, cannot be construed to make out a federal cause of action, as alleged.

The allegations in the Complaint are therefore insufficient to state any viable claim against these individuals. Accordingly, these defendants should be dismissed from the case.

E.   Private Citizens

Section 1983 actions cannot proceed against private parties, not acting under color of state law.   The United States Constitution "erects no shield against merely private conduct,

however . . . wrongful." Blum v. Yarketsky, 457 U.S. 991, 1002 (1981).  A private person can be held to be a susceptible to suit under section 1983, under only three circumstances:  (1) if there is an elaborate financial or regulatory nexus between the private person and the government, compelling the private person's conduct; (2) if the private person has assumed a traditionally public function; or (3) if the government and the private person are involved in a symbiotic relationship involving the sharing of profits.  See Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002); see also Blum, 457 U.S. at 1004.

Here, Randall has listed a number of private individuals as defendants, including Wendy's attorneys and John Cameron, acting in his capacity as an attorney for Joseph Coutu.  Specifically, Randall has claimed that all attorneys in New Hampshire are state actors because the NHSC unified the New Hampshire Bar.  The structure of the New Hampshire Bar Association does not make its members into state actors, however, for the purposes of section 1983.  See Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (per curiam) (private attorney sued for actions taken as court-appointed counsel, was not acting under color of state law); see also Polk County v. Dodson, 454 U.S. 312, 325 (1981)

32

(public defender employed by county did not act under color of state law in representing criminal defendant).

Randall also alleges that the private attorneys and other private individuals can be held liable under section 1983 because they engaged in a conspiracy with state court judges.  His allegations of conspiracies between the judges and these individuals, however, are conclusory, including his allegation that Judge Cardello conspired to conceal an illegal deal between Cameron and Coutu.  Such conclusory allegations are not entitled to a presumption of truth in determining if a plaintiff has stated a viable claim for relief under section 1983:  Although "pro se complaints are to be read generously, . . . allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements."  <u>Slotnick v. Garfinkle</u>, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam) (citation omitted); <u>see also</u> <u>Ashcroft</u>, ___ U.S. at ___, 129 S. Ct. at 1951 (conclusory nature of allegations disentitles them to presumption of truth).  Accordingly, Randall's claims against private citizens, including the Coutus and the private attorneys, should be dismissed.

<u>Conclusion</u>

For the foregoing reasons, I recommend dismissal of all claims in the Complaint (doc. nos. 1 & 14).  In an Order this date, I have denied Randall's motion for an extension of time to file a supporting memorandum (doc. no. 2) and the request for appointment of counsel, set forth in the Complaint, without prejudice to renewal if the Report and Recommendation is not approved.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: April 2, 2010

cc:   R.B.H., pro se

34